IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLEY SASSANO, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>REWARD ZONE USA, LLC and FLUENT, INC.,<br><br>Defendants. | Case No.:<br><br>CLASS-ACTION COMPLAINT<br><br><br>Jury Trial Demanded |

**CLASS-ACTION COMPLAINT**

COMES NOW Atley Sassano ("Plaintiff"), individually, and on behalf of all others similarly situated, and for their Class-Action Complaint against Defendants Reward Zone USA, LLC ("Reward Zone") and Fluent, Inc. ("Fluent") and with Reward Zone "Defendants"). In connection therewith, Plaintiff alleges as follows:

**BACKGROUND ON TCPA**

1.   In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

1

2. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

3. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

4. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

5. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

6. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, FTC Issues Biennial Report to Congress on the National Do Not Call Registry (Jan. 5, 2022) available at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

## PARTIES

7. Plaintiff Atley Sassano is an individual, who was at all times relevant to this action, a resident and citizen of the State of North Carolina.

8. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

9. Defendant Reward Zone is a corporation with its headquarters located at 128 Court Street, 3rd Floor, White Plains, NY 10601.

10. Defendant Fluent, is a corporation with an address of 300 Vesey St 9th Floor, New York, NY 10282.

11. Defendants are each a "person" as that term is defined by 47 U.S.C. § 153(39).

12. Fluent, Inc. is the parent company of Reward Zone.

13. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

15. This Court has personal jurisdiction over Defendants Reward Zone and Fluent, which are both headquartered and conduct business in the State of New York.

16. For those reasons, this Court has personal jurisdiction over Defendants.

17. Furthermore, because Defendants are headquartered in this District and a substantial portion of the occurrences and transactions underlying this action occurred within this District, venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

**A. Fluent's Spam Text Message Operation and its Stipulated Judgment with the FTC**

18. At all times relevant, Defendants were in the business of online and SMS marketing.

19. For their business model to be profitable, Defendants sought to attract

4

consumers at scale to their owned digital media properties, including their websites.

20. Defendants admit that their "success depends on [their] ability to attract users to [their] websites and generate revenues from [the users'] activities thereon in a cost effective manner." Fluent SEC Form 10-K, page 15 (Mar. 16, 2021).

21. In order to attract a sufficient number of consumers to satisfy their advertiser clients, Defendants rely on, and are dependent upon, third-party publishers or affiliate networks to drive consumers to their digital media properties and websites. See Fluent SEC Form 10-K, pages 6, 11, 15 (Mar. 16, 2021).

22. Specifically, Defendants admit that "[a] substantial majority of [their] revenue is attributable to visitor traffic originating from third-party publishers . . . ." Fluent SEC Form 10-K, page 15 (Mar. 16, 2021).

23. Defendants are aware that their third-party publishers use text message marketing. Fluent SEC Form 10-K, page 16 (Mar. 16, 2021) ("We and our third-party publishers use email, text messages, push notifications, telephone calls and social media, among other channels, to reach users for marketing purposes.")

24. It was not necessarily money that Defendants sought from consumers, but the consumers' personal data. That data, would then be sold to buyers and

other marketers.

25. Defendants' SMS marketing messages often included misleading statements claiming an affiliation with companies such as Amazon, Wal-Mart and CostCo.

26. Fluent and Reward Zone's SMS marketing strategy and its spam text messages purporting to offer "rewards" has been the subject to Federal Trade Commission enforcement actions and penalties, with the FTC concluding:

> Fluent and its affiliates lure consumers to its websites using deceptive ads that falsely promise employment opportunities or free valuable items, such as a job interview with UPS or a $1,000 Walmart gift card, according to the complaint. These ads direct consumers to one of Fluent's thousands of websites, which utilize a range of "dark patterns" to trick consumers into providing their personal information and "consenting" to receive robocalls and other marketing solicitations. Instead of the promised job opportunity or reward, these sites sell consumers' information to third-party marketers, including robocallers and other telemarketers. From January 2018 to December 2019, through these practices, Fluent obtained and sold more than 620 million telemarketing leads, the FTC says.

https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-law-enforcers-nationwide-announce-enforcement-sweep-stem-tide-illegal-telemarketing-calls-us

27. In July of 2023, Fluent, Reward Zone and several affiliated companies stipulated to a judgment of $2.5 million with the FTC as a result of their unlawful and deceptive marketing practices. *See* United States v. Fluent, Inc. et, al 9:23-cv-81045-AMC (S.D. Fla. 2023).

28. However, that payment is but a fraction of what Defendants would owe to consumers whose rights and privacy were violated under the TCPA from

Fluent and Reward Zones' persistent spam text messages sent for the purpose of promoting their websites and acquiring consumer data.

### B. Facts Specific to Sassano

29. At all times relevant to this action, Sassano was the owner, subscriber and primary user of a cell phone. The phone number associated with her cell phone is (864) XXX-9755

30. Sassano registered her number on the Do-Not-Call registry on or around December 30, 2020 to obtain solitude from unwanted telemarketing calls and text messages.

31. Sassano used her cell phone/number primarily for personal purposes, namely, to communicate with friends and family members.

32. Before Defendants commenced their telemarketing campaign, Sassano did not provide Defendants express written consent to send her marketing text messages.

33. Sassano has no prior business relationship with either Defendant.

34. Nonetheless, Defendants (either directly or by and through their agents) sent Sassano a series of irritating spam text messages soliciting "rewards" and "sweepstakes" she did not want or request.

35. In those texts, Defendants solicited rewards and discounts in exchange

for her personal data.

36.  Defendants sent a series of text messages over the course of many months, including the following text messages from April 6, 2021, July 27, 2021 and July 28, 2021, which are copied below:



37.  As reflected above, two of those text messages were sent after 9:00 pm EST, despite the fact Sassano resided in North Carolina and had a South Carolina

8

area code and both states are within the Eastern Standard Time Zone.

38. Accordingly, Defendants knowingly and willfully texted Sassano without express written consent (or any consent) and did so during the FCC's designated quiet hours where it is impermissible to place marketing calls or to send marketing text messages.

39. Plaintiff clicked the link to identify the party/parties sending spam text messages to her unlawfully. When she clicked the link, she was directed to Reward Zone webpages, which purported to offer rewards and sweepstakes and identified Reward Zone on the bottom of the page. A true and correct copy of a screenshot from the website is copied below:



40. Because of the Reward Zone website and the commonality between the text messages received and those described in the FTC enforcement action and stipulated judgment, Plaintiff is highly confident Defendants or their agents are responsible for the text messages.

41. Plaintiff found the aforementioned text messages to be annoying, distracting and an invasion of her privacy.

### Direct and Vicarious Liability

42. Plaintiff alleges Fluent is vicariously liable for SMS text messages sent by Reward Zone and/or on its behalf.

43. If Reward Zone directly sent the text messages, it is directly liable. In the alternative, if Reward Zone hired third-party agents to sent text messages on it and Fluent's behalf, then both Fluent and Reward Zone are vicariously liable.

44. On May 9, 2013, the FCC issued its Declaratory Ruling, advising "sellers" (entities on whose behalf telemarketing calls or texts are sent) may not avoid liability by outsourcing telemarketing to third-parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since

> consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

45.     Moreover, the 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.*, at 6587 n. 107.

46.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

47.     Furthermore, given the widespread and pervasive TCPA violations in messages purporting to offer rewards and sweepstakes, Fluent and Reward Zone had reason to carefully scrutinize the marketing activities of any telemarketing vendors.

48.     Defendants hired, encouraged, permitted, and enjoyed the benefits of mass spam-marketing by third-party vendors.

49.     Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from TCPA violations.

## Class Allegations

50. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff bring this lawsuit as a class action on behalf of himself and all others similarly situated.

51. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Sassano seeks to represent the following class:

> **National Do-Not-Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than one telephone call or SMS message from or on behalf of Reward Zone; 2) advertising sweepstakes or rewards; (3) during a 12-month period; (4) to a residential telephone number; and, (5) to a phone number that was registered on the Do Not Call Registry for 31 or more days at the time the calls were placed.
>
> **Quiet Hours Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than one telephone call or SMS message from or on behalf of Reward Zone; 2) advertising sweepstakes or rewards; (3) during a 12-month period; (4) to a residential telephone number; and, (5) before 8:00 am or after 9:00 pm, based on the area code of the recipient.

52. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, as circumstances dictate.

53. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believe that hundreds or thousands

of people have been harmed by Fluent and Reward Zone's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Fluent and/or Reward Zone (or others acting on their behalf).

54. Members of the proposed class have suffered damages in an amount where that it would make filing separate lawsuits by individual members economically infeasible.

55. On information and belief, Fluent and Reward Zone have sent text messages to and continues to text people who are registered on the National Do-Not-Call Registry. It is reasonable to expect that Defendants will continue to make such calls absent this lawsuit.

56. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Defendants sent text messages to Plaintiff and the putative class members after they were registered on the National Do Not Call Registry more than 31 days;
   b. Whether Defendants' conduct violates 47 U.S.C. § 227(c);
   c. Whether Defendants' conduct violates the rules and regulations implementing the TCPA;
   d. Whether any contract with third-party telemarketers creates an agency relationship;
   e. Whether Defendants ratified violations by vendors;

  f. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

57. Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

58. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seeks to represent. Plaintiff has retained lawyers who are competent at litigating the TCPA and class-actions.

59. Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

60. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to

pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

61. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

62. Questions of law and fact, particularly the propriety of calling phone numbers registered on the National Do-Not-Call Registry, predominate over questions affecting only individual members.

63. Defendants acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT II
### Violations 47 U.S.C. § 227(c)(5) and 47 CFR 64.1200(c) of the TCPA
### (Violation of the National Do-Not-Call Rules)

64. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receives more than one call on their cell phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

65. Plaintiff registered her number on the National Do-Not-Call Registry.

66. Plaintiff used her phone as a residential line.

67. Plaintiff was a residential subscriber.

68. The calls/texts placed Plaintiff were solicitations.

69. Plaintiff seeks to represent the Do-Not-Call Registry Class.

70. The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

71. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to cell phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

72. By making calls to the cell phones of Plaintiff and the putative class members after the numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

73. Defendants knew or should have known that the putative class members had their numbers registered on the Do Not Call Registry.

74. Plaintiff and the putative class members are entitled to damages of $500.00 per call made by or on behalf of Defendants and up to $1,500.00 per call if the Court finds that Defendants willfully violated the TCPA.

75. Plaintiff and the putative class members are entitled to an order from the Court enjoining Defendants from violating the TCPA's regulations that prohibit calls/texts to cell phone numbers registered on the Do Not Call Registry.

**Demand for Judgment**

WHEREFORE Plaintiff Atley Sassano, individually, and on behalf of all others similarly situated, request the Court grant the following relief:

a. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure Rule 23, certifying this action as a class action and appointing Plaintiff as representatives of the class;

b. Enter an order appointing Kimmel & Silverman, P.C. as counsel for the class;

c. Enter judgment in favor of Plaintiff and the putative class members for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Fluent and Reward Zone willfully violated the TCPA;

d. Enter judgment in favor of Plaintiff and the putative class members that enjoins Defendant from violating the TCPA's regulations by calling cell phone numbers registered on the Do Not Call Registry;

e. Award Plaintiff and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration; and,

f. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

## COUNT III
## Violation of 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(c)(1) of the TCPA
## (Violation of the FCC Quiet Hours Rule)

76. The TCPA delegates rulemaking to the FCC.

77. The FCC's regulations provide in relevant part that "no person or entity shall initiate any telephone solicitation to: Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location). 47 C.F.R. § 64.1200(c)(1).

78. Defendant sent text messages and placed calls to Plaintiff that were received before after 9:00 pm EST despite Plaintiff having a South Carolina area code and residing in North Carolina (both on Eastern Standard Time).

79. The calls/texts before 8:00 am or after 9:00 pm made to Plaintiff and the putative class, were in violation were in violation of 47 C.F.R. § 64.1200(c)(1).

80. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebled damages.

WHEREFORE, Plaintiff, Atley Sassano individually, and on behalf of all others similarly situated, requests the Court enter judgment against Defendants and grant the following relief:

a. Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C as class counsel;

c. Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) (and its corresponding regulations) and up to $1,500 per violation of each subsection if Defendant willfully violated the TCPA;

d. Award Plaintiff and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration; and,

e. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

Dated: April 4, 2025                    Respectfully submitted,

                                        KIMMEL & SILVERMAN, P.C.

                                        By: */s/ Craig T. Kimmel*

>Craig T. Kimmel, Esq.
>Jacob U. Ginsburg, Esq. (*pro hac vice* anticipated)
>30 East Butler Ave.
>Ambler, PA 19002
>Phone: (267) 468-5374
>Facsimile: (877) 788-2864
>Email: kimmel@creditlaw.com
>jginsburg@creditlaw.com
>teamkimmel@creditlaw.com
>
>*Attorneys for Plaintiff*