**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ATLEY SASSANO, *individually and on behalf of all others similarly situated*,<br><br>      Plaintiff,<br><br>    v.<br><br>REWARD ZONE USA, LLC and FLUENT, INC.,<br><br>      Defendants. | Case No. 7:25-cv-02845-KMK |

**DEFENDANTS REWARD ZONE USA, LLC AND FLUENT, INC.'S ANSWER AND**
**AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendants Reward Zone USA, LLC and Fluent, Inc. hereby submit their Answer and Affirmative Defenses to Plaintiff Atley Sassano's Class Action Complaint.

With respect to Plaintiff's unnumbered first paragraph, Defendants admit only that Plaintiff files a putative class action lawsuit against Defendants but denies any wrongdoing or that Plaintiff is entitled to any relief.

**BACKGROUND ON TCPA[1]**

1.    In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the

---

[1] For the Court's convenience, Defendants have incorporated the headings that appear in the Complaint, as well as the formatting from those headings. But Defendants do not necessarily agree with, and do not admit, the characterizations of such headings unless specifically admitted herein; nor do Defendants waive any right to object to those characterizations.

TCPA, which speaks for itself. Defendants deny any remaining allegations.

2.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the TCPA, which speaks for itself. Defendants deny any remaining allegations.

3.      Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the TCPA, which speaks for itself. Defendants deny any remaining allegations.

4.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

**RESPONSE:** Denied.

5.      Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd.

2

7961, 7964 (F.C.C. July 10, 2015).

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the TCPA, which speaks for itself. Defendants deny any remaining allegations.

6.    In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, FTC Issues Biennial Report to Congress on the National Do Not Call Registry (Jan. 5, 2022) available at: https://www.ftc.gov/news-events/news/pressreleases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

**RESPONSE:** Defendants admit that Plaintiff purports to cite a press release form the FTC, which speaks for itself. Defendants deny any remaining allegations.

## PARTIES

7.    Plaintiff Atley Sassano is an individual, who was at all times relevant to this action, a resident and citizen of the State of North Carolina.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

8.    Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that require no response. To the extent a response is required, Defendants admit only that Plaintiff filed suit as an individual.

9.    Defendant Reward Zone is a corporation with its headquarters located at 128 Court Street, 3rd Floor, White Plains, NY 10601.

**RESPONSE:** Denied.

10.    Defendant Fluent, is a corporation with an address of 300 Vesey St 9thFloor, New

3

York, NY 10282.

**RESPONSE:** Denied.

11.     Defendants are each a "person" as that term is defined by 47 U.S.C. § 153(39).

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that require no response. To the extent a response is required, Defendants admit only that they are limited liability companies.

12.     Fluent, Inc. is the parent company of Reward Zone.

**RESPONSE:** Defendants admit only that Reward Zone is a subsidiary of Fluent.

13.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**RESPONSE:** Denied.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that require no response. To the extent a response is required, Defendants admit that there is generally federal question jurisdiction over TCPA claims.

15.     This Court has personal jurisdiction over Defendants Reward Zone and Fluent, which are both headquartered and conduct business in the State of New York.

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that

require no response. To the extent a response is required, Defendants admit only that they both operate in New York.

16.      For those reasons, this Court has personal jurisdiction over Defendants.

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that require no response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

17.      Furthermore, because Defendants are headquartered in this District and a substantial portion of the occurrences and transactions underlying this action occurred within this District, venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**RESPONSE:** Denied.

## FACTUAL BACKGROUND

### A. <u>Fluent's Spam Text Message Operation and its Stipulated Judgment with the FTC</u>

18.      At all times relevant, Defendants were in the business of online and SMS marketing.

**RESPONSE:** Denied.

19.      For their business model to be profitable, Defendants sought to attract consumers at scale to their owned digital media properties, including their websites.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

20.      Defendants admit that their "success depends on [their] ability to attract users to [their] websites and generate revenues from [the users'] activities thereon in a cost effective manner." Fluent SEC Form 10-K, page 15 (Mar. 16, 2021).

5

**RESPONSE:** Defendants admit only that Plaintiff purports to cite a SEC Form, which speaks for itself. Defendants deny any remaining allegations.

21.    In order to attract a sufficient number of consumers to satisfy their advertiser clients, Defendants rely on, and are dependent upon, third-party publishers or affiliate networks to drive consumers to their digital media properties and websites. See Fluent SEC Form 10-K, pages 6, 11, 15 (Mar. 16, 2021).

**RESPONSE:** Defendants admit only that Plaintiff purports to cite a SEC Form, which speaks for itself. Defendants deny any remaining allegations.

22.    Specifically, Defendants admit that "[a] substantial majority of [their] revenue is attributable to visitor traffic originating from third-party publishers . . .." Fluent SEC Form 10-K, page 15 (Mar. 16, 2021).

**RESPONSE:** Defendants admit only that Plaintiff purports to cite a SEC Form, which speaks for itself. Defendants deny any remaining allegations.

23.    Defendants are aware that their third-party publishers use text message marketing. Fluent SEC Form 10-K, page 16 (Mar. 16, 2021) ("We and our third-party publishers use email, text messages, push notifications, telephone calls and social media, among other channels, to reach users for marketing purposes."

**RESPONSE:** Defendants admit only that Plaintiff purports to cite a SEC Form, which speaks for itself. Defendants deny any remaining allegations.

24.    It was not necessarily money that Defendants sought from consumers, but the consumers' personal data. That data, would then be sold to buyers and other marketers.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

6

25.     Defendants' SMS marketing messages often included misleading statements claiming an affiliation with companies such as Amazon, Wal-Mart and CostCo.

**RESPONSE:** Denied, including for lack of sufficient knowledge.

26.     Fluent and Reward Zone's SMS marketing strategy and its spam text messages purporting to offer "rewards" has been the subject to Federal Trade Commission enforcement actions and penalties, with the FTC concluding:

> Fluent and its affiliates lure consumers to its websites using deceptive ads that falsely promise employment opportunities or free valuable items, such as a job interview with UPS or a $1,000 Walmart gift card, according to the complaint. These ads direct consumers to one of Fluent's thousands of websites, which utilize a range of "dark patterns" to trick consumers into providing their personal information and "consenting" to receive robocalls and other marketing solicitations. Instead of the promised job opportunity or reward, these sites sell consumers' information to third-party marketers, including robocallers and other telemarketers. From January 2018 to December 2019, through these practices, Fluent obtained and sold more than 620 million telemarketing leads, the FTC says.

https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-law-enforcers-nationwide-announce-enforcement-sweep-stem-tide-illegal-telemarketing-calls-us

**RESPONSE:** Defendants admit only that Plaintiff purports to cite an FTC press release, which speaks for itself. Defendants deny any remaining allegations

27.     In July of 2023, Fluent, Reward Zone and several affiliated companies stipulated to a judgment of $2.5 million with the FTC as a result of their unlawful and deceptive marketing practices. *See United States v. Fluent, Inc. et*, al 9:23-cv-81045-AMC (S.D. Fla. 2023).

**RESPONSE:** Defendants admit only that Plaintiff purports to cite authority, which speaks for itself. Defendants deny any remaining allegations.

28.     However, that payment is but a fraction of what Defendants would owe to consumers whose rights and privacy were violated under the TCPA from Fluent and Reward Zones' persistent spam text messages sent for the purpose of promoting their websites and

acquiring consumer data.

**RESPONSE:** Denied.

**B.  <u>Facts Specific to Sassano</u>**

29.    At all times relevant to this action, Sassano was the owner, subscriber and primary user of a cell phone. The phone number associated with her cell phone is (864) XXX-9755

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

30.    Sassano registered her number on the Do-Not-Call registry on or around December 30, 2020 to obtain solitude from unwanted telemarketing calls and text messages.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

31.    Sassano used her cell phone/number primarily for personal purposes, namely, to communicate with friends and family members.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

32.    Before Defendants commenced their telemarketing campaign, Sassano did not provide Defendants express written consent to send her marketing text messages.

**RESPONSE:** Denied.

33.    Sassano has no prior business relationship with either Defendant.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

34.    Nonetheless, Defendants (either directly or by and through their agents) sent Sassano a series of irritating spam text messages soliciting "rewards" and "sweepstakes" she did

not want or request.

**RESPONSE:** Denied.

35.     In those texts, Defendants solicited rewards and discounts in exchange for her personal data.

**RESPONSE:** Denied.

36.     Defendants sent a series of text messages over the course of many months, including the following text messages form April 6, 2021, July 27, 2021 and July 28, 2021, which are copied below:[2]

**RESPONSE:** Denied.

37.     As reflected above, two of those text messages were sent after 9:00 pm EST, despite the fact Sassano resided in North Carolina and had a South Carolina area code and both states are within the Eastern Standard Time Zone.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

38.     Accordingly, Defendants knowingly and willfully texted Sassano without express written consent (or any consent) and did so during the FCC's designated quiet hours where it is impermissible to place marketing calls or to send marketing text messages.

**RESPONSE:** Denied.

39.     Plaintiff clicked the link to identify the party/parties sending spam text messages to her unlawfully. When she clicked the link, she was directed to Reward Zone webpages, which purported to offer rewards and sweepstakes and identified Reward Zone on the bottom of the page.

---

[2] Defendants omit the screenshots Plaintiff included in the Complaint.

A true and correct copy of a screenshot from the website is copied below:

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

40.    Because of the Reward Zone website and the commonality between the text messages received and those described in the FTC enforcement action and stipulated judgment, Plaintiff is highly confident Defendants or their agents are responsible for the text messages.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them. Defendants add that the FTC matter has no relevance to Plaintiff's allegations.

41.    Plaintiff found the aforementioned text messages to be annoying, distracting and an invasion of her privacy.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

### Direct and Vicarious Liability

42.    Plaintiff alleges Fluent is vicariously liable for SMS text messages sent by Reward Zone and/or on its behalf.

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that require no response. To the extent a response is required, Defendants admit that Plaintiff alleges vicarious liability, but deny that they are liable to Plaintiff under any theory.

43.    If Reward Zone directly sent the text messages, it is directly liable. In the alternative, if Reward Zone hired third-party agents to sent text messages on it and Fluent's behalf, then both Fluent and Reward Zone are vicariously liable.

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that

10

require no response. To the extent a response is required, Defendants admit that Plaintiff alleges

direct and vicarious liability, but deny that they are liable to Plaintiff under any theory.

44.    On May 9, 2013, the FCC issued its Declaratory Ruling, advising "sellers" (entities

on whose behalf telemarketing calls or texts are sent) may not avoid liability by outsourcing

telemarketing to third-parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> of the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases substantially
> more expensive and less efficient, since consumers (or law enforcement agencies)
> would be required to sue each marketer separately in order to obtain relief. As the
> FTC noted, because "[s]ellers may have thousands of "independent" marketers,
> suing one or a few of them is unlikely to make a substantive difference for consumer
> privacy.

*In re: Dish Network, LLC*, 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations

omitted).

**RESPONSE:** Defendants admit only that Plaintiff purports to cite FCC authority, which

speaks for itself. Defendants deny any remaining allegations.

45.    Moreover, the 2013 FCC ruling rejected a narrow view of TCPA liability, including

the assertion that a seller's liability requires a finding of formal actual agency and immediate

direction and control over third parties who place a telemarketing call. *Id.*, at 6587 n. 107.

**RESPONSE:** Defendants admit only that Plaintiff purports to cite FCC authority, which

speaks for itself. Defendants deny any remaining allegations, including Plaintiff's characterization

of the FCC authority.

46.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*, at 6593.

**RESPONSE:** Defendants admit only that Plaintiff purports to cite FCC authority, which speaks for itself. Defendants deny any remaining allegations, including Plaintiff's characterization of the FCC authority.

47.     Furthermore, given the widespread and pervasive TCPA violations in messages purporting to offer rewards and sweepstakes, Fluent and Reward Zone had reason to carefully scrutinize the marketing activities of any telemarketing vendors.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

48.     Defendants hired, encouraged, permitted, and enjoyed the benefits of mass spam-marketing by third-party vendors.

**RESPONSE:** Denied.

49.     Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from TCPA violations.

**RESPONSE:** These allegations are not well-pleaded facts but legal conclusions that require no response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

**Class Allegations**

50.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff bring this lawsuit as a class action on behalf of himself [*sic*] and all others similarly situated.

**RESPONSE:** Defendants admit that Plaintiff purports to bring this action on behalf of a putative class.  Defendants deny the remaining allegations and specifically deny that any class is authorized by Fed. R. Civ. P. 23.

51.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Sassano seeks to represent the following class:

> **National Do-Not-Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than one telephone call or SMS message from or on behalf of Reward Zone; 2) advertising sweepstakes or rewards; (3) during a 12-month period; (4) to a residential telephone number; and, (5) to a phone number that was registered on the Do Not Call Registry for 31 or more days at the time the calls were placed.

> **Quiet Hours Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than one telephone call or SMS message from or on behalf of Reward Zone; 2) advertising sweepstakes or rewards; (3) during a 12-month period; (4) to a residential telephone number; and, (5) before 8:00 am or after 9:00 pm, based on the area code of the recipient.

**RESPONSE:** Defendants admit that Plaintiff purports to bring this action on behalf of a putative class. Defendants deny the remaining allegations and specifically deny that any class is authorized by Fed. R. Civ. P. 23.

52.    Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, as circumstances dictate.

**RESPONSE:** Defendants admit only that Plaintiff purports to reserve certain rights.

53.     The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believe that hundreds or thousands of people have been harmed by Fluent and Reward Zone's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Fluent and/or Reward Zone (or others acting on their behalf).

**RESPONSE:** Denied.

54.     Members of the proposed class have suffered damages in an amount where that it would make filing separate lawsuits by individual members economically infeasible.

**RESPONSE:** Denied.

55.     On information and belief, Fluent and Reward Zone have sent text messages to and continues to text people who are registered on the National Do-Not-Call Registry. It is reasonable to expect that Defendants will continue to make such calls absent this lawsuit.

**RESPONSE:** Denied.

56.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.   Whether Defendants sent text messages to Plaintiff and the putative class members after they were registered on the National Do Not Call Registry more than 31 days;
b.   Whether Defendants' conduct violates 47 U.S.C. § 227(c);
c.   Whether Defendants' conduct violates the rules and regulations implementing the TCPA;
d.   Whether any contract with third-party telemarketers creates an agency relationship;
e.   Whether Defendants ratified violations by vendors;
f.   Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

**RESPONSE:** Denied, including all subparagraphs.

14

57.    Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

**RESPONSE:** Denied.

58.    Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seeks to represent. Plaintiff has retained lawyers who are competent at litigating the TCPA and class-actions.

**RESPONSE:** Denied.

59.    Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

**RESPONSE:** Denied.

60.    A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

**RESPONSE:** Denied.

61.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

**RESPONSE:** Denied.

62.    Questions of law and fact, particularly the propriety of calling phone numbers registered on the National Do-Not-Call Registry, predominate over questions affecting only individual members.

**RESPONSE:** Denied.

63.    Defendants acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

**RESPONSE:** Denied.

## COUNT II
### Violations 47 U.S.C. § 227(c)(5) and 47 CFR 64.1200(c) of the TCPA
### (Violation of the National Do-Not-Call Rules)

64.    The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receives more than one call on their cell phone "within any 12-month period by or on behalf of the same entity." See 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the TCPA, which speaks for itself. Defendants deny any remaining allegations.

65.    Plaintiff registered her number on the National Do-Not-Call Registry.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

66.     Plaintiff used her phone as a residential line.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

67.     Plaintiff was a residential subscriber.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

68.     The calls/texts placed Plaintiff were solicitations.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of these allegations and, therefore, deny them.

69.     Plaintiff seeks to represent the Do-Not-Call Registry Class.

**RESPONSE:** Defendants admit that Plaintiff seeks to represent a putative class but deny any wrongdoing or that the putative class could ever be certified under Rule 23.

70.     The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the TCPA, which speaks for itself. Defendants deny any remaining allegations.

71.     In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to cell phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

**RESPONSE:** Denied.

17

72.    By making calls to the cell phones of Plaintiff and the putative class members after the numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

**RESPONSE:** Denied.

73.    Defendants knew or should have known that the putative class members had their numbers registered on the Do Not Call Registry.

**RESPONSE:** Denied.

74.    Plaintiff and the putative class members are entitled to damages of $500.00 per call made by or on behalf of Defendants and up to $1,500.00 per call if the Court finds that Defendants willfully violated the TCPA.

**RESPONSE:** Denied.

75.    Plaintiff and the putative class members are entitled to an order from the Court enjoining Defendants from violating the TCPA's regulations that prohibit calls/texts to cell phone numbers registered on the Do Not Call Registry.

**RESPONSE:** Denied.

### Demand for Judgment

WHEREFORE Plaintiff Atley Sassano, individually, and on behalf of all others similarly situated, request the Court grant the following relief:

a.    Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure Rule 23, certifying this action as a class action and appointing Plaintiff as representatives of the class;

b.    Enter an order appointing Kimmel & Silverman, P.C. as counsel for the class;

18

c.   Enter judgment in favor of Plaintiff and the putative class members for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if Fluent and Reward Zone willfully violated the TCPA;

d.   Enter judgment in favor of Plaintiff and the putative class members that enjoins Defendant from violating the TCPA's regulations by calling cell phone numbers registered on the Do Not Call Registry;

e.   Award Plaintiff and the class all expenses of this action, and requiring defendant to pay the costs and expenses of class notice and claims administration; and,

f.   Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

**RESPONSE:** Defendants admit that Plaintiff seeks the enumerated relief but deny that Plaintiff is entitled to any relief from Defendants whatsoever.

## COUNT III
### Violation 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(c)(1) of the TCPA
### (Violation of the FCC Quiet Hours Rules)

76.    The TCPA delegates rulemaking to the FCC.

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the TCPA, which speaks for itself. Defendants deny any remaining allegations.

77.    The FCC's regulations provide in relevant part that "no person or entity shall initiate any telephone solicitation to: Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location). 47 C.F.R. § 64.1200(c)(1).

**RESPONSE:** Defendants admit that Plaintiff purports to cite authority related to the TCPA, which speaks for itself. Defendants deny any remaining allegations.

19

78.    Defendant sent text messages and placed calls to Plaintiff that were received before after 9:00 pm EST despite Plaintiff having a South Carolina area code and residing in North Carolina (both on Eastern Standard Time).

**RESPONSE:** Denied.

79.    The calls/texts before 8:00 am or after 9:00 pm made to Plaintiff and the putative class, were in violation were in violation of 47 C.F.R. § 64.1200(c)(1).

**RESPONSE:** Denied.

80.    As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebled damages.

**RESPONSE:** Denied.

WHEREFORE, Plaintiff, Atley Sassano individually, and on behalf of all others similarly situated, requests the Court enter judgment against Defendants and grant the following relief:

a.    Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b.     Enter an order appointing Kimmel & Silverman, P.C as class counsel;

c.    Enter judgment in favor of Plaintiff and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) (and its corresponding regulations) and up to $1,500 per violation of each subsection if Defendant willfully violated the TCPA;

d.    Award Plaintiff and the class all expenses of this action, and requiring Defendants to pay the costs and expenses of class notice and administration; and,

e.    Award Plaintiff and the class such further and other relief the Court

deems just and appropriate.

**RESPONSE:** Defendants admit that Plaintiff seeks the enumerated relief but deny that

Plaintiff is entitled to any relief from Defendants whatsoever.

<u>**General Denial**</u>

Defendants deny any and all allegations set forth in the Complaint that are not specifically

admitted herein.

<u>**Affirmative Defenses**</u>

Defendants hereby assert the following defenses to the claims and allegations set forth in

the Complaint. By asserting these defenses, Defendants do not admit that they bear the burden of

proof or the burden of persuasion with respect to any particular defense.

**First Affirmative Defense**
**(Failure to State a Cause of Action)**

The Complaint fails to allege facts sufficient to state a cause of action against Defendants.

For example, the TCPA does not provide a cause of action for "quiet hours" violations.

**Second Affirmative Defense**
**(Acquiescence, Estoppel, Waiver, Fraud, and Unclean Hands)**

Plaintiff and the putative class members are barred from asserting their claims, in whole or

in part, by the doctrine of acquiescence, estoppel, waiver, fraud, and unclean hands.  For example,

Plaintiff cannot assert claims to the extent they arise from her own misconduct or wrongdoing,

such as intentionally pressing a backspace button to create a claim against Defendants instead of

the senders of the texts.

### Third Affirmative Defense
### (Arbitration and Class Action Waiver)

Plaintiff and the putative class members are barred from asserting claims in this forum to the extent that their claims are subject to a binding arbitration agreement and an agreement to arbitrate their disputes on an individual (non-class) basis.

### Fourth Affirmative Defense
### (Laches)

Plaintiff and the putative class members are barred from asserting their claims in whole or in part by the doctrine of laches.

### Fifth Affirmative Defense
### (Consent)

Plaintiff and the putative class members are barred from asserting their claims in whole or in part to the extent the texts at issue were sent with the recipients' prior express permission or consent and that consent was either irrevocable or was not effectively revoked.

### Sixth Affirmative Defense
### (Failure to Mitigate Damages)

To the extent that the Complaint alleges that Plaintiff and the putative class members suffered any purported injury or damages, they failed to take any and all reasonable or necessary actions to avoid or reduce their damages, and any damages awarded to them must be reduced accordingly.

### Seventh Affirmative Defense
### (No Proximate Cause)

Defendants did not proximately cause any damages, injury, or violation alleged in the Complaint. Instead, to the extent any harm occurred, the acts of Plaintiff, the putative class members, or third parties (*e.g.*, vendors, contractors, or unrelated non-parties) proximately caused

any damages, injuries, or violations at issue, to the extent they occurred at all.

**Eighth Affirmative Defense**
**(Standing)**

Plaintiff and the putative class members lack standing to bring the claims alleged in the Complaint because any harm allegedly caused by the texts at issue (which Defendant denies) is not fairly traceable to any violation allegedly committed by Defendants, and because Plaintiff has not suffered any Article III harm under *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (particularly with that respect to the putative class she seeks to represent).

**Ninth Affirmative Defense**
**(No Authorization to Send Text Messages)**

None of the subject communications were sent by Defendants, nor authorized to be sent on its behalf.

**Tenth Affirmative Defense**
**(No Agency or Vicarious Liability and Proportional Allocation of Fault)**

Any damages, injury, violation, or wrongdoing alleged in the Complaint was caused by third parties or Plaintiff for which Defendants cannot be held vicariously liable. Further, Defendants did not authorize, ratify, encourage, participate in, aid, abet, or assist in any of the conduct alleged in the Complaint and cannot be held liable for it. For example, to the extent vendors or contractors or unrelated non-parties caused any damages, injury, violations of the law, or wrongdoing or engaged in the conduct alleged in the Complaint, those entities or individuals acted outside the scope, or in violation, of the parties' agreements, and Defendants did not approve of that conduct. As such, Defendants cannot be held vicariously liable. And even if it could, its liability, if any, must be eliminated or reduced by an amount proportionate to the fault attributable

to third parties or Plaintiff.

**Eleventh Affirmative Defense**
**(Substantial Compliance with Laws)**

Defendants are not liable to Plaintiff or the putative class members because Defendants acted reasonably and with due care and substantially complied with all applicable statutes, regulations, ordinances, and other laws.

**Twelfth Affirmative Defense**
**(Reasonable Practices)**

Any and all claims brought in the Complaint are barred in whole or in part because Defendants have established and implemented reasonable practices and procedures to prevent violations of the TCPA and related regulations.

**Thirteenth Affirmative Defense**
**(*Bona Fide* Error)**

Any and all claims brought in the Complaint are barred in whole or in part because, to the extent there was any violation of the TCPA and related regulations (which is denied), any such violation was not intentional and resulted from a *bona fide* error.

**Fourteenth Affirmative Defense**
**(Good Faith)**

Any and all claims brought in the Complaint are barred because Defendants possessed a good faith belief that it had consent to contact the number at issue. Defendants acted in good faith in any and all interactions with Plaintiff and did not directly or indirectly perform any acts whatsoever which would constitute a violation of any rights of Plaintiff or any duty, if any, owed

to Plaintiff.

**Fifteenth Affirmative Defense**
**(No Charge)**

Plaintiff and the putative class members were not "charged for the call" with respect to the calls at issue, as that term is used in the TCPA.

**Sixteenth Affirmative Defense**
**(Adequate Remedy at Law)**

The Complaint fails to state a claim for injunctive relief because Plaintiff has an adequate remedy at law. For example, the TCPA provides for statutory penalties of $500 to $1,500 per call, or monetary compensation for actual damages.

**Seventeenth Affirmative Defense**
**(No Knowing or Willful Misconduct)**

Any claim for treble damages is barred because Defendants did not engage in knowing or willful misconduct.

**Eighteenth Affirmative Defense**
**(One Text)**

Any and all claims brought in the Complaint are barred in whole or in part to the extent Plaintiff or any putative class member did not receive more than one text message within any 12-month period by or on behalf of Defendants.

**Nineteenth Affirmative Defense**
**(Failure to Join Party and/or Name the Proper Defendant)**

The claims brought in the Complaint are barred, in whole or in part, by Plaintiff's failure to join necessary or indispensable parties. Plaintiff's claims are also barred, in whole or in part, to the extent Plaintiff failed to name the proper defendant(s), over which the Court may lack personal jurisdiction.

25

**Twentieth Affirmative Defense**
**(Hobbs Act/ FCC Exceeding Delegated Authority)**

The Hobbs Act cannot be validly or constitutionally applied to preclude Defendants from raising defenses to an action arising under the TCPA or rules or regulations promulgated thereunder. Plaintiff's TCPA claims are also barred to the extent they are based on regulations or rulings that exceed the FCC's delegated authority.

**Twenty-first Affirmative Defense**
**(Damages Limitation)**

Plaintiff and the putative class members are barred from asserting their claims to the extent that limitations on exclusive remedies and damages are set forth in any applicable terms and conditions that apply to them.

**Twenty-second Affirmative Defense**
**(Due Process)**

The application of the TCPA upon which the Complaint is based, including the imposition of statutory damages on Defendants, would violate the Due Process provisions of the United States Constitution. For example, statutory penalties sought by Plaintiff are excessive, severe, and oppressive, particularly to the extent Plaintiff seeks them on a class-wide basis. Thus, as applied in this case, any award of damages should be reduced to comport with due process. *See Golan v. Veritas Entm't, LLC*, 2017 WL 3923162, at *3 (E.D. Mo. Sept. 7, 2017) ("[T]he TCPA's statutory damage clause is constitutional, but a specific damages award may be unconstitutional if it is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" (quoting *Capital Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907 (8th Cir. 2012))).

**Twenty-third Affirmative Defense**
**(No Immediate Threat of Future Injury)**

Plaintiff's request for injunctive relief is barred with respect to any alleged claims because the alleged violations are not likely to recur.

**Twenty-fourth Affirmative Defense**
**(Established Business Relationship)**

All claims brought in the Complaint are barred to the extent Plaintiff or any putative class member had an established business relationship with the sender.

**Twenty-fifth Affirmative Defense**
**(Residential Number)**

Plaintiff's claims are barred to the extent her number or putative class members' numbers are not residential.

**Twenty-sixth Affirmative Defense**
**(Class Action Deficiencies)**

Plaintiff cannot satisfy the prerequisites set forth in Federal Rule of Civil Procedure 23 to maintain this action as a class action. Further, Defendants give notice that in the event the Court certifies a class, which Defendants deny would be appropriate, it reserves the right to adopt and incorporate by reference each and every applicable defense pleaded (and any others that may be appropriate at that point) to all members of such class.

**Twenty-seventh Affirmative Defense**
**(Reservation of Right to Assert Further Defenses)**

Defendants have not knowingly or intentionally waived any applicable defenses and gives notice that it intends to rely on such other and further affirmative defenses as may become available during discovery in this action. Defendants reserve the right to amend its Answer to assert any such defense.

27

**Prayer for Relief**

WHEREFORE, Defendants pray for judgment as follows:

1.    That Plaintiff take nothing from Defendants by reason of this Complaint and that

judgment be entered in favor of Defendants;

2.    For dismissal of the Complaint with prejudice;

3.    That the Court award Defendants costs and reasonable attorneys' fees;

4.    For such other relief as the Court deems just and proper.


Dated: June 9, 2025                    Respectfully submitted,

                                       /s/ *Leo O'Toole*
                                       Leo O'Toole
                                       Matthew A. Keilson (*pro hac* forthcoming)
                                       **WATSTEIN TEREPKA LLP**
                                       75 14th Street NE, Ste. 2600
                                       Atlanta, Georgia 30309
                                       Tel: (404) 779-5190
                                       lotoole@wtlaw.com

                                       *Counsel for Defendants*

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of June, 2025, a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record entitled to notice who are registered users of ECF.

*/s/ Leo O'Toole*
Leo O'Toole
